UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE VOLTAIRE THEATRE, | ) | |
| Plaintiff, | ) ) ) | 00C 2463 |
| v. | ) ) | No. |
| TANGO GRILL, INC. d/b/a VOLTAIRE, | ) ) | Judge  **JUDGE PLUNKETT** |
| Defendant. | ) ) | Magistrate  **MAGISTRATE JUDGE NOLAN** |

## COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Plaintiff, The Voltaire Theatre ("Voltaire Theatre"), by its attorneys, for its Complaint against defendant Tango Grill, Inc. d/b/a Voltaire, states as follows:

### Nature of the Action

1. This is an action for trademark infringement and unfair competition by plaintiff, operator of the well-known Voltaire Theatre, arising from defendant's willful and unlawful misappropriation of plaintiff's valuable property rights by opening a competitive establishment under the infringing name "Voltaire."

### Parties

2. Plaintiff Voltaire Theatre is a not-for-profit corporation organized and existing under the laws of the State of Illinois.

3. Defendant Tango Grill, Inc., is a corporation organized and existing under the laws of the State of Illinois. On information and belief, defendant is engaged in the business, *inter alia*, of developing, owning, operating and/or franchising a restaurant and entertainment establishment that will operate under the name "Voltaire."

/-1/

## Jurisdiction and Venue

4. The Court has jurisdiction over the claims asserted in Count I based on 14 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a), in that said claims arise under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Court has jurisdiction over the claims asserted in Counts II and III, pursuant to 28 U.S.C. § 1338(b), in that the claims of unfair competition asserted therein are related to the trademark claims asserted in Count I. The Court also has supplemental jurisdiction over the claims asserted in Counts II and III, pursuant to 28 U.S.C. § 1367, in that said claims are so related to the claims asserted in Count I, that they form a part of the same case or controversy.

5. Venue is proper in this Court pursuant to U.S.C. § 1391(b), in that the defendant resides in this district and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## Background Facts

6. In 1988, Café Voltaire, Ltd. was opened at 1860 N. Elston Avenue in Chicago, Illinois. Mark Epstein was a shareholder in that corporation. Café Voltaire, Ltd. ran at the foregoing address a restaurant/coffee house and cabaret under the name "Cafe Voltaire" in which live performances were put on. Included in the type of performances given were cabaret acts (principally involving singing), comedic performances, plays, one-man shows, improvisational performances and theatrical performances.

7. In 1990, Mark Epstein acquired a majority interest in Cafe Voltaire which by then had relocated to 3231 N. Clark Street, Chicago, Illinois. In about June 1997, Lisa Dowda became the theatre manager for Café Voltaire.

8. From 1990 through 1998, there were over 5000 performances at Café Voltaire, of theatre, poetry, comedy, performance art and musical productions. However, due to a significant

2

increase in operating expenses at 3231 North Clark Street, Café Voltaire could no longer do business at that location. Upon the announcement of the closing of Café Voltaire at 3231 N. Clark Street, in the spring of 1998, Lisa Dowda organized several benefits to raise money for the relocation of the performing arts part of Café Voltaire (which was also commonly known simply as "Voltaire"). In addition, several newspaper articles were published reporting that Café Voltaire was looking for a new location and would reopen at that new location.

9. In March of 1998, Voltaire Theatre was incorporated by Lisa Dowda as a not-for-profit corporation with the purpose of continuing to offer the same kinds of theater and live performances that had been offered for years at Café Voltaire. On July 23, 1998, Voltaire Theatre entered into a license agreement with Café Voltaire whereby Voltaire Theatre was granted a license to use the name "Voltaire" in connection with theatre and performing arts.

10. Upon the closing of Café Voltaire, Lisa Dowda, president of Voltaire Theatre, began looking for a new location to present theatre and live performances. In November and December of 1998, Voltaire Theatre entered into lease negotiations for rental space at 3336 North Clark Street, Chicago, Illinois. However, the landlord and Voltaire Theatre were unable to agree on any lease terms for that location.

11. During this search for a suitable and affordable location for Voltaire Theatre, Voltaire Theatre published a newsletter, *Cry Wolf*. This newsletter was distributed twice during 1998 and 1999 and was published to inform the public of Voltaire Theatre's search for a new location and to solicit donations.

12. Since March of 1998, Voltaire Theatre has engaged in extensive publicized fundraising efforts for the relocation of Voltaire. In March and April of 1999 there were five benefit productions of performances at the Ivanhoe Theatre in Chicago and The Playground in

Chicago to which the general public was invited to attend. All the proceeds from these productions were donated to Voltaire Theatre, as was publicized in the efforts to bring patrons to the performances.

13. In addition, Voltaire Theatre has actively solicited community support through foundation grants. Such organizations as the Richard Driehaus Foundation, the Playboy Foundation and WPWR Channel 50, all of which are based in Chicago, have already committed certain funds to Voltaire Theatre as a result of grant proposals submitted to them by Voltaire Theatre. Moreover, Voltaire's grant requests are currently pending with the Mayer and Morris Kaplan Family Foundation and the Gaylord and Dorothy Donnelley Foundation.

14. Moreover, the Chicago theatre community has actively supported Voltaire Theatre's relocation project through fiscal sponsorship and requests for donations from their members in newsletters.

15. In May of 1999, Voltaire Theatre began working with the Planning and Development Department for the City of Chicago in connection with Voltaire Theatre's efforts to find suitable space for Voltaire Theatre in downtown Chicago's Theatre District. In November of 1999, Voltaire Theatre submitted to the City of Chicago a proposal to purchase and redevelop 174 West Randolph. In March of 2000, Voltaire Theatre was advised that the City had selected another developer to purchase and redevelop the property at 174 West Randolph, but had given that developer a directive to include Voltaire Theatre and other proposed theatre tenants, virtually all of whom became involved in the proposed project through Voltaire Theatre's efforts, in its redevelopment plans. Since that time Voltaire Theatre has been working with the developer regarding the architectural plans for the space that Voltaire Theatre will lease at 174 West Randolph.

16. As set forth more fully above, Voltaire Theatre has used the name "Voltaire" in commerce continuously since 1988 and that name has come to be associated in the public's mind with theatre and entertainment services for the public.

17. Voltaire Theatre has extensively promoted the name "Voltaire" and its plans to reopen at a new location.

18. As a result of the widespread and continuous use and promotion of the name "Voltaire" in connection with the entertainment services provided by plaintiff, the name "Voltaire" has become distinctive, having acquired in the mind of the public a secondary meaning, in that the public associates the name "Voltaire" with a single source of such entertainment services. Voltaire Theatre has acquired significant goodwill and developed common law trademark rights in and to the name "Voltaire."

19. Voltaire Theatre recently learned that defendant intends in the near future to open a restaurant and cabaret, offering live performances, under the name "Voltaire" at 3221 N. Halsted Street, Chicago. When Voltaire Theatre became aware of defendant's plans to open the establishment in Chicago, indeed in the very neighborhood where Café Voltaire had been located for several years, it sent defendant a cease and desist letter. Defendant refused to discontinue its plan to use the name "Voltaire."

### Count I
### Violations of the Lanham Act

20. Voltaire Theatre repeats and realleges the allegations of paragraphs 1 through 19 of this Complaint as though fully set forth in this paragraph.

21. Since 1987, Voltaire Theatre and its predecessors in interest have continuously used the name "Voltaire" in interstate commerce and in Illinois to identify the services provided by plaintiff and to distinguish those services from those provided by others. Voltaire Theatre and

its predecessors in interest have advertised and promoted its entertainment services using the name "Voltaire," and the name has achieved a high degree of recognition by the public. As a result, the public in Chicago has come to recognize the name "Voltaire" as identifying a single source of such entertainment services.

22. Defendant's use of the name "Voltaire" commenced long after Voltaire Theatre and its predecessors in interest began using the name "Voltaire" in trade or commerce.

23. Section 1125(a)(1)(A) of the Lanham Act provides, in relevant part, that

> (1) Any person who, or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —
>
> (A) is likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action . . .

24. Defendant's acts and use in interstate commerce of the name "Voltaire" in connection with defendant's business constitute false descriptions and representations that defendant's restaurants are, in fact, sponsored or affiliated with Voltaire Theatre or its predecessors in interest. Defendant's acts are in violation of 15 U.S.C. § 1125(a) in that defendant has used in connection with services a false designation of origin and a false description or representation, including words and symbols tending falsely to describe and represent those services, and has caused those services to enter into and to affect interstate commerce.

25. Defendant's unauthorized use of "Voltaire" in interstate commerce constitutes infringement of Voltaire Theatre's valuable trademark, and such use by defendant is likely to cause confusion, to cause mistake, and to deceive consumers.

26. Defendant has engaged in a course of conduct designed to exploit and misappropriate Voltaire Theatre's trademark for defendant's own benefit, and threatens to continue to infringe Voltaire Theatre's trademark, as alleged herein, and will continue to do so unless enjoined. As a result of defendant's actions, as set forth above, Voltaire Theatre has been injured and will, unless defendant is enjoined, continue to be injured in its business and property.

27. It would be difficult to ascertain accurately the amount of compensation that would afford Voltaire Theatre adequate relief for such a flagrant infringement of Voltaire Theatre's trademark. Voltaire Theatre has no adequate remedy at law and will be irreparably harmed unless defendant's wrongful conduct is enjoined by the Court, in that monetary damages alone cannot fully compensate Voltaire Theatre for the actual and threatened injuries caused by defendant's wrongful conduct.

28. Voltaire Theatre has been aggrieved by defendant's acts and practices in that consumers are deceived into believing that defendant's establishment is sponsored by, approved by, or affiliated with Voltaire Theatre or its predecessors in interest. As a result, Voltaire Theatre is entitled to permanent injunction, enjoining and prohibiting defendant's actions and threatened continued action.

### Count II

### Violations of the Illinois
### Uniform Deceptive Trade Practices Act

29. Voltaire Theatre repeats and realleges paragraphs 1-19 and 24-25 of this Complaint as if fully set forth in this paragraph.

30. Defendant's unauthorized use of "Voltaire" in commerce constitutes an unfair or deceptive act or practice in violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq.), in one or more of the following particulars:

a. Defendant intends to pass off goods and services as those of another and threatens to do so in the future;

b. Defendant intends to cause likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services and threatens to do so in the future;

c. Defendant will cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another and threatens to do so in the future;

d. Defendant will represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that it does not have and threatens to do so in the future; and/or

e. Defendant will engage in other conduct which similarly creates a likelihood of confusion or misunderstanding and threatens to do so in the future.

31. Defendant's acts are willful, and Voltaire Theatre is entitled to an award of its reasonable attorney's fees and costs incurred in this action.

### Count III

### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

32. Voltaire Theatre repeats and realleges paragraphs 1-19, 24-25, and 29-30 of this Complaint as if fully set forth in this paragraph.

33. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, provides, in relevant part, as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any

deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. . . .

34. By committing the deceptive trade practices described in paragraphs 14 through 16 of this Complaint, in violation of the Uniform Deceptive Trade Practices Act, defendant has thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act.

35. As a direct and proximate result of the aforementioned conduct of defendant, Voltaire Theatre will be damaged, in its business and property, in an amount to be proved at trial.

WHEREFORE, Voltaire Theatre requests this Court to enter judgment in its favor and against defendant as follows:

(1) enter a temporary restraining order, preliminary injunction and permanent injunction against defendant and all persons in active concert and participation with it:

(a) enjoining the use in any fashion of the name "Voltaire" or any other colorable imitation of Voltaire Theatre's trademark "Voltaire," in connection with defendant's entertainment establishment or in any other trade or commerce;

(b) making any statement or representation that defendant's restaurants, products, or services are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with Voltaire Theatre or its predecessors in interest;

(c) any other conduct that is likely to cause confusion or to cause mistake or to deceive as to the source, affiliation, connection, or association of defendant's restaurants, products, or services;

(2) that defendant be ordered to pay to Voltaire Theatre all damages suffered by reason of defendant's unfair competition as set forth in this Complaint, pursuant to 815 ILCS 505/10a;

(3) that defendant deliver up to Voltaire Theatre for destruction all signage, brochures, menus, and other written materials that contain the infringing name "Voltaire" or any other colorable imitation of the name "Voltaire";

(4) that defendant cause to be removed any signs, billboards or other exterior display of the infringing name "Voltaire" or any other colorable imitation of the name "Voltaire";

(5) that defendant cease any other use of the name "Voltaire" or any colorable imitation thereof, including, but not limited to, cancellation of any and all telephone directory listings, and that defendant execute all documents necessary to change its corporate name to a name that does not include "Voltaire" or any colorable imitation thereof;

(6) directing defendant to file with the Court and serve upon Voltaire Theatre's attorneys within thirty (30) days after the issuance of the preliminary and permanent injunction orders a written report under oath setting forth in detail the manner and form in which defendant has complied with the preliminary and permanent injunction orders;

(7) that defendant be ordered to pay Voltaire Theatre the costs of this action, including Voltaire Theatre's reasonable attorney's fees, pursuant to 815 ILCS 510/3; and

(8) that the Court award Voltaire Theatre such further relief as it may deem just under the circumstances.

THE VOLTAIRE THEATRE

BY: _____
One of Its Attorneys

John N. Scholnick
Kendra Johnson Panek
Catherine E. Steigmann
NEAL, GERBER & EISENBERG
Two North LaSalle Street
Chicago, IL 60602
(312) 269-8000

D:\TEMP\NGEDOCS-#186618-v1-Complaint_for_Trademark_Infringement.DOC

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
The Voltaire Theatre

JUDGE PLUNKETT

**DEFENDANTS**
Tango Grill, Inc.

00C 2463

APR 25 2000

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT: Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

MAGISTRATE JUDGE NOLAN

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John N. Scholnick
Kendra Johnson Panek
Catherine E. Steigmann
Neal, Gerber & Eisenberg
2 N. LaSalle St., #2300
Chicago, IL 60602
(312) 269-8000

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☒ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. §1125(a)  Violations of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Practices Act.

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint
JURY DEMAND: ☐ YES ☐ NO

**VIII.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 4/24/00

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT